CASE NO. 13-50183

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | DC No. 2:10-CR-00923-SJO-30 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | U.S. District Court for |
| vs. | ) | Central District of California |
| | ) | Los Angeles |
| ANTHONY GABOUREL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

APPELLANT'S OPENING BRIEF

ON APPEAL FROM FINAL JUDGMENT AND SENTENCE
IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

HONORABLE S. JAMES OTERO
United States District Judge

Ludlow B. Creary II (SBN 193793)
LAW OFFICES OF LUDLOW B. CREARY II
5900 Wilshire Blvd., Suite 620
Los Angeles, CA 90036
Telephone: (213) 480-6228
Attorney for Appellant
Anthony Gabourel

# TABLE OF CONTENTS

Bail Status                                                          1

Jurisdiction                                                        1

Issues Presented                                                    2

Statement of the Case                                               2

Statement of the Facts                                              4

    A.   Charges                 4

    B.   Trial                   5

    C.   Post Trial Motions       7

    D.   Sentencing Hearing       8

Summary of the Argument                                             9

Argument                                                           10

I. GABOUREL'S CONVICTION FOR COUNT 1 SHOULD BE REVERSED BECAUSE THE GOVERNMENT FAILED TO ESTABLISH EVIDENCE OF A RICO CONSPIRACY     10

  A. The Evidence Of A Conspiracy to Engage In A Racketeering Enterprise Was Insufficient to Sustain the Jury's Guilty Verdict As to Mr. Gabourel     10

    1.  The Evidence Did not Establish the Existence of an Enterprise     10

II. GABOUREL'S CONVICTION FOR COUNT 2 SHOULD BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE OF GABOUREL'S INVOLVEMENT IN A CONSPIRACY TO COMMIT THE CRIME OF MURDER

FOR PURPOSES OF MAINTAINING HIS POSITION IN
THE ENTERPRISE                                        15

    A. The Government Failed to Establish the Existence
    of an Enterprise                                 15

    B. The Government Failed to Establish that Mr.
    Gabourel was Part of Any Conspiracy to Aid a
    Racketeering Enterprise                          16

III. GABOUREL'S CONVICTION FOR COUNT 7 SHOULD
BE REVERSED BECAUSE THERE IS INSUFFICIENT
EVIDENCE OF THE EXISTENCE OF AN UNDERLYING
CRIME OF VIOLENCE TO SUSTAIN THE JURY'S
VERDICT                                              17

Conclusion                                           18

Certificate of Related Cases                         19

Certificate of Compliance                            20

# TABLE OF AUTHORITIES

**Federal Cases**

Boyle v. United States
556 U.S. 938, 129 S. Ct. 2237, 173 L.Ed.2d 1265 (2009) *passim*

Chang v. Chen,
80 F.3d. 1293 (9th Cir.1996) …………………………………..… 12

In Re Winship,
397 U.S. 358 (1970) …………………………………………….. 10

Jackson v. Virginia,
443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) …………....... 11

Simon v. Behavioral Health, Inc.,
208 F.3d 1073, 1083 (9th Cir. 2000)………………………….... 12

United States v. Cusino,
694 F.2d 967 (9th Cir. 1982) ………………………………….. 11

United States v. Fernandez,
388 F.3d 1199, 1123 n.13 (9th Cir. 2004) …………………….…… 11

United States v. Sullivan,
522 F.3d 967 (9th Cir. 2008) ……………………………….. 11, 15, 17

United States v. Turkette,
452 U.S. 576, 583, 101 S. Ct. 2524, 69 L.Ed.2d 246 (1981) …. 12, 13

## STATUTES, RULES, GUIDELINE, OTHER

18 U.S.C. Section 924(c)                     4, 17

18 U.S.C. Section 1291                        1

18 U.S.C. Section 1959                       4, 15

18 U.S.C. Section 1961(1)                    5, 13

18 U.S.C. Section 1962(c)                                        11

18 U.S.C. Section 1962(d)                                    2, 4, 11

21 U.S.C. Section 841                                             4

21 U.S.C. Section 846                                             4

21U.S.C. Section 856                                              4

21 U.S.C. Section 860                                             4

U.S. Sentencing Guidelines, Section 2A1.1                         8

U.S. Sentencing Guidelines, Section 2A1.5                         8

U.S. Sentencing Guidelines, Section 2E1.1                         8

U.S. Sentencing Guidelines, Section 2E1.3                         8

Federal Rule of Criminal Procedure, Rule 29                     3, 7

## BAIL STATUS

Defendant-Appellant Anthony Gabourel, is currently in the custody of the United States Bureau of Prisons serving the 40-year sentence imposed by the district court in 2:10-00923-SJO-30.  According to the Bureau of Prisons website, Mr. Gabourel's projected release date is August 4, 2044.

## JURISDICTION

On April 8, 2013, appellant was sentenced to a 40-year prison sentence to be followed by a 5-year term of supervised release following his trial in the district court.  The district court entered its final judgment on April 25, 2013,  (ER Vol I, 2).[1]

On April 8, 2013, Mr. Gabourel timely filed a notice of appeal from his conviction and sentence.  (ER Vol. I, 1).  This Court has jurisdiction under 18 U.S.C. §1291.

// //

// //

// //

// //

---

[1] "ER" refers to the Appellant's Excerpts of Record.  "CR" refers to the Clerk's Record and is followed by the district court docket number.

## ISSUES PRESENTED

This appeal presents 3 issues, relating to the trial:

1.  The district court should reverse Gabourel's conviction for Count 1 because the government failed to establish evidence of a RICO conspiracy.

2.  Gabourel's conviction for Count 2 should be reversed because there was insufficient evidence of Gabourel's involvement in a conspiracy to commit the crime of murder for purposes of maintaining his position in the enterprise.

3.  Gabourel's conviction for Count 7 should be reversed because there is insufficient evidence of the existence of an underlying crime of violence to sustain the jury's verdict.

## STATEMENT OF THE CASE

Mr. Gabourel was charged in six counts of a 46-count Indictment: conspiracy to engage in racketeering, violence in aid of racketeering, conspiracy with intent to distribute controlled substances (namely cocaine hydrochloride, cocaine base, heroine, and marijuana), use and carrying of a firearm during and in relation to and possession of a firearm in furtherance of a crime of violence and drug trafficking crime.

2

Mr. Gabourel went to trial on June 5, 2012. At the conclusion of the government's evidence, Mr. Gabourel filed a Motion for Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure (CR 1441). The district court took the motion under submission, and Mr. Gabourel presented a defense. At the conclusion of evidence but prior to closing argument, the district court denied Mr. Gabourel's Rule 29 motion. (CR 1453).

The jury returned a guilty verdict against Mr. Gabourel on counts 1, 2 and 7. (ER, Vol I, 50).

Following the verdict, Mr. Gabourel filed, and the district court granted, a motion for request to extend time in which to bring post-trial motions. Mr. Gabourel joined in co-defendants' Motion for Judgment of Acquittal or in the Alternative a New Trial on August 23, 2012 (CR 1601). On October 15, 2012, the district court denied the motion. (CR 1766).

Mr. Gabourel's sentencing hearing took place on March 25, 2013. The district court imposed a sentence of 40 years followed by a 5-year term of supervised release. (ER, Vol I, 2).

// //

// //

// //

// //

## STATEMENT OF FACTS

### A.     Charges

On August 18, 2010, the government charged approximately 41 defendants in a 46 count Indictment alleging violations of 18 U.S.C. § 1962(d), conspiracy to engage in Racketeering Activity, 18 U.S.C. § 1959, Violent Crimes in Aid of Racketeering, 21 U.S.C. § 846, Conspiracy to Distribute Cocaine, Cocaine Base, Heroine and Marijuana, 18 U.S.C. § 924(c)(1), Use of a Firearm in Furtherance of a Crime of Violence and a Drug Trafficking Crime, 21 U.S.C. § 860, Distribution and Manufacturing of Narcotics in and Near Schools, Playgrounds and Public Housing Facilities, 21 U.S.C. § 856(a)(1), Maintaining a Drug-Involved Premises, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Distribution and Possession with Intent to Distribute Heroin, Cocaine and Cocaine Base.  The charges alleged that members of the Pueblo Bishop Bloods gang conducted a criminal enterprise whereby they used force, violence and threats of force, as well as drug trafficking activities to further the purposes of the gang.

Mr. Gabourel was charged in six of the forty-six counts.  He was charged with conspiracy to engage in racketeering activity (Count 1), violence in aid of racketeering – conspiracy to murder (Count 2), violence in aid of racketeering - murder (Count 3), violence in aid of racketeering- attempt murder (Count 4), conspiracy to distribute cocaine, cocaine base in the form of crack cocaine, and

heroin (Count 5), and possession of a firearm in furtherance of a crime (Count 7). (ER Vol I, 8).

The activities which gave rise to the allegations are those of members of the Pueblo Bishop Bloods Gang (hereinafter "PBB"). The PBB gang consisted of residents of the Pueblo del Rio Housing Projects in Los Angeles. According to the indictment, Mr. Gabourel and the PBB gang constituted an "enterprise," as defined by 18 U.S.C. § 1961(1) and engaged in "conspiracy to traffic in narcotics and controlled substances, murder, conspiracy to commit murder, attempted murder, robbery, extortion, and witness intimidation." (ER, Vol I, 8).

The indictment alleged that Mr. Gabourel conspired, attempted to and did commit murder in order to enhance the violent reputation of the PBB gang, to retaliate against rival gang members and to enhance his status within the gang. (ER, Vol I, 8). In addition, Mr. Gabourel was alleged to have sold drugs within the PBB gang's territory. (Id.)

## B.    Trial

On June 5, 2012, trial began. The district court severed the trial so that only three defendants were tried together in one setting, although in total, six defendants went to trial. Mr. Gabourel was tried with co-defendants Jermaine Hardiman and Gary White. (CR 1397).

Trial lasted a total of 17 days throughout which the government presented evidence consisting mainly of confidential informants, and cooperating witnesses. The government also presented evidence of surveillance videos recorded by cooperating witnesses.

At trial, the government established that the Pueblo Bishop Bloods gang was at most, a loose group of individuals consisting of sub-groups or "cliques." Testimony established that members were loyal only within their sub-groups or "cliques" and that this loyalty did not extend beyond these sub-groups. The government presented testimony from three cooperating witnesses (Jamal Payne, JK Gray and Arthur Maiden). All three witnesses testified regarding their activities within the gang.

Witness Jamal Payne testified he was a former PBB gang member. He testified that when he did commit "shootings" he was never ordered nor instructed to shoot anyone or commit any other crimes on behalf of the PBB gang. Although Payne testified that "shootings" and other crimes were done for the benefit of the PBB gang, he admitted he chose to commit his "shootings" and other crimes on his own. (ER, Vol I, 56-62, RT 6/13/12 140:23-141:16; 145:20-146:7; 147:21-149:2).

Witness Arthur Maiden testified he was a former PBB gang member. He testified that no one within the PBB gang encouraged or ordered him to do anything. More importantly, Maiden admitted that he never received any special

6

recognition or accolades from anyone within the PBB gang for committing crimes. Maiden testified that he committed criminal and violent acts because he thought those activities would help his personal reputation within the gang. (ER Vol I, 56-57, RT 6/14/12 177:17-178:8).

Finally, Marquis Edwards, a former PBB gang member testified regarding his time in the PBB gang and his activities as a former member. Edwards testified that there was no leadership structure within the PBB gang and everyone was free to do whatever they wanted for themselves. He further testified that no one instructed others to commit crimes and that no one had to report back to anyone within the gang. He testified that "putting in work" was not a requirement of the gang and that no one was ever punished for failing to "put in work." (ER Vol 1, 58-59, RT 7/3/12 43:4-44:24).

On July 16, 2012, the jury returned guilty verdicts against Mr. Gabourel on three of the six counts charged.

## C.    Post Trial Motions

At the close of the government's case, Mr. Gabourel joined/made a written motion pursuant to Rule 29. The district court continued the argument on the motion until after the defense presented its case. Mr. Gabourel presented a full argument on the insufficiency of the government's evidence to meet its burden of proving beyond a reasonable doubt the elements of Count 1 (the racketeering

conspiracy) and more specifically, the insufficiency of the evidence to establish overt acts 14, 32, 54, 55, and 79. The district court denied Mr. Gabourl's motion on July 9, 2012. (CR 1453).

On July 16, 2012, the jury returned its verdict. The district court instructed Mr. Gabouel to submit a proposed order for extension of time in which to bring post trial motions. The district court signed this order on July 24, 2012. On August 23, 2012, Mr. Gabourel joined in co-defendant Hardiman's renewed Motion for Judgment of Acquittal, and in the alternative, New Trial. On the Stipulation of the parties, the hearing on the post-trial motions was continued until October 15, 2012. The government filed its opposition to Mr. Gabourel's motion on September 24, 2012.

On October 15, 2012, the district court denied Mr. Gabourel's Motion for Judgment of Acquittal and New Trial. (CR 1766).

### D.     Sentencing Hearing

The Presentence Report and Recommendation ("PSR") calculated the advisory Guideline offense level to be 43 and Mr. Gabourel's Criminal History Category at II. The PSR calculated the base offense level at 43 based on § 2E1.1, § 2E1.3, § 2A1.5(c)(1), § 2A1.1 and further found that this offense level was appropriate given that Mr. Gabourel conspired with another Pueblo Bishop Blood

gang member to commit murder in order to boost their status within the gang. (ER, Vol II, 1).

The PSR found that Mr. Gabourel was a proud Pueblo Bishop Bloods gang member who was eager to make a name for himself within the enterprise, particularly through gang violence. (Id.)  Additionally, the report states that Mr. Gabourel's criminal history painted a dangerous picture of him although the PSR did take into consideration mitigating factors, such as Mr. Gabourel's age at the time.  According to the PSR's calculations, the defendant had an advisory guideline range of Life plus 5 years consecutive imprisonment. (Id.)

The government's recommendation was substantially below that of the PSR. The government recommended a sentence of 40 years (480 months) imprisonment with 5 years supervised release including special restrictions. (ER, Vol II, 1)

The district court sentenced Mr. Gabourel to 40 years imprisonment with 5 years supervised release.   (ER, Vol I, 2)

## SUMMARY OF THE ARGUMENT

The government failed to allege the "enterprise" element of Count 1, the racketeering conspiracy, which is a required element.  The evidence at trial was insufficient to support the jury's finding that the government had proven the "enterprise" element for an associated-in-fact conspiracy distinct from the pattern

of racketeering from which it engaged.  The government was required to allege and prove that the "enterprise" was separate and ascertainable apart from the pattern of racketeering.  However, the Indictment contained only broad and very general allegations and failed to specify the existence of a separate entity other than the pattern of racketeering.

The government's evidence at trial demonstrated that the PBB gang was, at most, a group of individuals committing crimes that sometimes rose to the level of racketeering activities.  The government's evidence failed to prove that the PBB gang was an entity separate from the racketeering activities in which certain members sometimes engaged.  The evidence presented is insufficient to prove the requisite "enterprise" element and does not support the jury's verdict as to Count 1, 2 or 7.

**ARGUMENT**

## I.    GABOUREL'S CONVICTION FOR COUNT 1 SHOULD BE REVERSED BECAUSE THE GOVERNMENT FAILED TO ESTABLISH EVIDENCE OF A RICO CONSPIRACY

The Fifth Amendment's due process clause protects "the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  A conviction is proper only when it rests on sufficient evidence. Sufficient evidence exists if, when viewing the evidence in the light most favorable

to the government, there is relevant evidence from which the jury could reasonably have found the defendant guilty beyond a reasonable doubt.  Jackson v. Virgina, 443 U.S. 307, 319 (1970); United States v. Cusino, 694 F.2d 185, 187 (9th Cir. 1982).  Any challenges to the sufficiency of the evidence are reviewed de novo. United States v. Sullivan, 522 F.3d 967, 974 (9th Cir. 2008).

### A. The Evidence Of A Conspiracy to Engage In A Racketeering Enterprise Was Insufficient to Sustain the Jury's Guilty Verdict As to Mr. Gabourel

#### 1. The Evidence Did not Establish the Existence of an Enterprise

The evidence presented at trial failed to establish that Mr. Gabourel conspired to engage in racketeering activities through an enterprise.  A violation of 18 U.S.C. § 1962(d) requires that the Government prove three things: 1) the existence of an "enterprise," 2) that the defendant was a member of that conspiracy and 3) a pattern of racketeering activity.  The Government must prove the contemplated or actual existence of a racketeering enterprise in order to satisfy the element requirements of a § 1962(d) charge of conspiracy to violate § 1962(c). See United States v. Fernandez, 388.F.3d 1199, 1123 n.13 (9th Cir. 2004).

In order to establish the existence of an enterprise the government must prove: 1) the existence of an ongoing organization, formal or informal, 2) that the ongoing organization has a hierarchical or consensual decision-making structure beyond that inherent in the alleged racketeering activity, and 3) the organization is

one in which the various associates function as a continuing unit.  United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L.Ed.2d 246 (1981); Chang v. Chen, 80 F.3d 1293, 1297, 1299-1300 (9th Cir. 1996).

In order for a group of individuals to qualify as an "enterprise," "the [decision-making] structure should provide some mechanism for controlling and directing the affairs of the group on an on-going, rather than ad hoc, basis." Chang, supra, 80 F.3d at 1299 (citation and internal quotation marks omitted); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1083 (9th Cir. 2000)("A group whose members collectively engage in an illegal act, in-and-of-itself, does not constitute an 'enterprise' for the purposes of RICO.").  An "enterprise" for purposes of a RICO conspiracy must have certain characteristics. Although there need not be an elaborate showing of hierarchy, the enterprise must have enough organization to make decisions for the group and maintain its own existence long enough to pursue a course of conduct.  See Boyle v. United States, 556 U.S. 938, 129 S. Ct. 2237, 2245 173 L.Ed.2d 1265 (2009).

To establish the existence of a RICO conspiracy, an "enterprise" requires: 1) structure, 2) that is ascertainable, and 3) whose existence is beyond that inherent in the pattern of pattern of racketeering.  See Boyle, supra, 129 S.Ct. at 2244-45.  It becomes apparent that an association-in-fact enterprise must contain three

structural features: 1) purpose, 2) relationship among those associated and 3) longevity.  Id.

Key to determining the existence of the enterprise is the requirement that the enterprise must be distinct from the pattern of racketeering activities themselves. In Turkette, the Court clearly explained that while an "enterprise" as defined under § 1961(4) may be a criminal or illegitimate organization, merely proving the existence of a pattern of racketeering activities by a group does not establish the existence of an enterprise.  See Id. at 2254, Turkette, supra, 452.U.S. at 583.

The government did not establish that the PBB gang was a criminal enterprise for purposes of RICO.  The government merely established that the PBB was a criminal street gang.  The testimony presented by the government, namely that of cooperating witness (CW) YG members, established that there was very little, if any, structure to the PBB gang.  These members testified that members of the PBB gang sold drugs for themselves, kept the money for themselves, were never asked to share or contribute proceeds from their drug sales, did not report to any OGs within the gang, and did not receive permission from OGs to sell drugs or conduct other criminal activity.

The government did not present any evidence of the existence of an "enterprise" separate and apart from the criminal activities performed by individual members of the PBB gang who performed these criminal activities for their

13

individual purposes.  Government witness, Payne, testified that when he conducted

shootings, he did it to increase his own status within the gang and that at no time

was he given permission to conduct the shootings nor did he request permission

from an OG or anyone else within the gang to conduct the shooting.  (ER, VOL, I,

49, RT 6/13/12 140:12-25). Other evidence presented by the government

throughout the trial merely presented instances of criminal activity conducted by

individual members of the PBB gang for their individual purposes and did not

establish that these individuals were at any time working on behalf of the PBB

gang.  Additionally, the government was unable to establish that the PBB gang had

any recognizable leadership that could direct the activities of its members.

Marquis Edwards testified that there was no real leadership within the PBB gang

because everyone basically did what they wanted, when they wanted and no one

ever directed or instructed anyone to commit crimes.  (ER, Vol I. 58-59, RT 7/3/12

43:4-44:24).

　　　　The evidence presented by the government established that the PBB gang

lacked structure, and consensus amongst its members.  Additionally, the

government failed to establish that Mr. Gabourel was part of any conspiracy to

engage in racketeering activities as part of the PBB "enterprise."  The

government's evidence demonstrated that Mr. Gabourel was conducting activities

for his personal benefit and was at no time directed to commit any activities on

behalf of the PBB gang nor did he at any time direct anyone to commit activities on behalf of the PBB gang.

At most, the government evidence established that the PBB gang consisted of several individuals committing criminal activities for their own personal benefit and not for the benefit of the PBB gang.  At no time did the evidence establish the existence of an "enterprise" distinct from the racketeering activity itself.

## II. GABOUREL'S CONVICTION FOR COUNT 2 SHOULD BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE OF GABOUREL'S INVOLVEMENT IN A CONSPIRACY TO COMMIT THE CRIME OF MURDER FOR PURPOSES OF MAINTAINING HIS POSITION IN THE ENTERPRISE

Challenges to the sufficiency of the evidence are reviewed de novo.  United States v. Sullivan, 522 F.3d 967, 974 (9th Cir. 2008).

A violation of 18 U.S.C. § 1959(a)(5) requires the government to prove the existence of an enterprise that engaged in racketeering activity and an agreement between two or more people to commit the crime of murder for the purposes of increasing or maintaining his position in the enterprise.

### A. The Government Failed to Establish the Existence of an Enterprise

As discussed above, the government failed to establish that the PBB gang was an enterprise for purposes of RICO.  The evidence presented by the government demonstrated that the PBB gang was at most a loose collection of

15

individuals committing crimes for the their personal benefit.  Several of the government's witnesses testified that the PBB gang lacked any discernible structure.  Additionally, several witnesses testified to a basic lack of agreement among PBB gang members regarding the activities of the gang.  Each member within the PBB gang was essentially working for himself.

### B. The Government Failed to Establish that Mr. Gabourel was Part of Any Conspiracy to Aid a Racketeering Enterprise

The evidence presented at trial failed to show that Mr. Gabourel was part of any conspiracy to aid a racketeering enterprise, namely, the PBB gang.  Several government witnesses testified that members of the PBB gang never reported the commission of crimes to anyone within the gang.  The evidence presented at trial merely established that crimes committed by PBB gang members were committed at their own discretion for their own personal benefit.

Marquis Edwards testified that there was no real structure within the gang and everyone did whatever they wanted to for their own benefit.  (ER, Vol I, 58-59, RT 7/3/12 43:4-44:24).

At most, the evidence showed that Mr. Gabourel was involved in a separate uncharged conspiracy to commit murder for his own personal benefit.

16

### III. GABOUREL'S CONVICTION FOR COUNT 7 SHOULD BE REVERSED BECAUSE THERE IS INSUFFICIENT EVIDENCE OF THE EXISTENCE OF AN UNDERLYING CRIME OF VIOLENCE TO SUSTAIN THE JURY'S VERDICT

Challenges to the sufficiency of the evidence are reviewed de novo. United States v. Sullivan, 522 F.3d 967, 974 (9th Cir. 2008).

A violation of 18 U.S.C. § 924(c) requires the government to prove that the defendant possessed a firearm to further a crime of violence. Here, the government was required to prove that Mr. Gabourel possessed a firearm in furtherance of the crime of conspiracy to engage in racketeering activity as charged in Count 1 of the indictment.

As discussed supra, the government failed to establish the existence of an "enterprise." In addition, evidence presented at trial was failed to prove Mr. Gabourel was involved in a conspiracy to engage in racketeering activities on behalf of a criminal enterprise. Count 7 should be reversed by virtue of the fact that the evidence at trial was insufficient to support the jury's verdict as to Count 1, which is a necessary element of the crime charged in Count 7.

// //

// //

// //

// //

17

## CONCLUSION

The Court should reverse Mr. Gabourel's conviction on Counts 1, 2 and 7 finding that the evidence presented at trial was insufficient to sustain the jury's verdict.


January 30, 2014                          ___/s/ Ludlow B. Creary II_____
                                          Ludlow B. Creary II
                                          Attorney for Appellant-Defendant
                                          Anthony Gabourel

# CERTIFICATE OF RELATED CASES

Counsel for appellant-defendant is aware of the following cases arising out of the same events and charges:

United States v. Gary White, CCA 12-50589

United States v. Jermaine Hardiman, CCA

United States v. Jason Davis, CCA 13-50368

United States v. Marquis Edwards, CCA 12-50130

United States v. Lee Henderson, CCA 12-50374

United States v. Darrin Dent, CCA 11-50548

United States v. Steven Renell Wiliams, Jr., CCA 12-50537

United States v. Robbionota Monson, CCA 12-50180

United States v. Leo Rickey Evans, CCA 11-50463

Counsel for appellant-defendant certifies that this list is the extent of his knowledge, after reasonable and diligent inquiry, of any pending or prior cases presenting issues related to those raised in this brief.


___/s/ Ludlow B. Creary II___
Ludlow B. Creary II
Attorney for Appellant-Defendant
Anthony Gabourel

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32-1, I certify that this brief is proportionally spaced, has a typeface of 14 points of more, and contains 4150 words, not including the Table of Contents, Table of Authorities, or this Certificate of Compliance, as calculated by my word processing program.


January 30, 2014                            ___/s/ Ludlow B. Creary II_____
                                            **Ludlow B. Creary II**
                                            **Attorney for Appellant-Defendant**
                                            **Anthony Gabourel**

## CERTIFICATE OF SERVICE

I hereby certify that on this day, January 31, 2014, I electronically filed the foregoing APPELLANT'S OPENING BRIEF and APPELLANT'S EXCERPTS OF RECORD with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed this 31st day of January, 2014, at Los Angeles, California.


___/s/ Ludlow B. Creary II__
Ludlow B. Creary II